**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GREGORY ALLEN EBRIGHT, III,

Petitioner,

v.

RANDEE REWERTS,

Respondent,
_________________________________/

Civil No. 2:25-CV-12204
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Gregory Allen Ebright, III, ("Petitioner"), incarcerated at the Cotton Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed by attorney Mark A. Linton, Petitioner challenges his conviction for first-degree home invasion, Mich. Comp. Laws § 750.110a(2); two counts of larceny in a building, Mich. Comp. Laws § 750.360, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b, and being a fourth habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. INTRODUCTION

Petitioner was convicted following a jury trial in the Shiawassee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a home invasion perpetrated against Joseph Chalker by Chalker's ex-girlfriend, DeaAnn Pollard, and her new boyfriend, defendant. While defendant and Pollard both participated in the home invasion, only defendant was tried because Pollard agreed to testify against defendant in exchange for dismissal of all of her charges. Pollard, who had children in common with Chalker, previously lived with Chalker at the subject house but left when the couple broke up. Chalker kept the couple's dog, and Pollard had been informed by Animal Control that there was a possibility of an abuse case being opened regarding the dog.
>
> Pollard enlisted defendant to help her get the dog back. Pollard, who was intoxicated by a combination of alcohol and Xanax, was driven by defendant to the house in a black pickup truck at a time when Pollard knew Chalker would not be home; two neighbors saw defendant and Pollard arrive in the truck. Pollard and defendant left with much more than just the dog: according to Chalker, when he got home he was missing two televisions, an Xbox, a Mossman shotgun, an antique rifle, DeWalt power tools, photos of the children, a utility trailer, a lawn tractor, and three compound bows. Pollard testified that she only wanted to take the dog and the photographs of the children, but defendant unilaterally began stealing other property. Chalker immediately suspected Pollard, but when he confronted her about it he discovered that none of his missing property was at her home. Pollard testified that, prior to going home, she brought the dog to her cousin's house and brought Chalker's property to a storage unit.
>
> After the confrontation with Chalker, defendant and Pollard spent the night with Pollard's cousin out of fear that the police would be looking for them at Pollard's house. The following day, in an additional attempt

> to hide from the police, defendant and Pollard drove to a campground. When the police could not find Pollard, Chalker suspected that she might have been with her cousin, and he relayed this information to the police. When the police went to the cousin's house they found Chalker's dog, and the cousin told them that some of the stolen property was likely to be at Pollard's storage unit and that Pollard could likely be found at the campground.
>
> The police found defendant and Pollard at a campground where they had been staying in a mobile camper. Police searched the camper, and found the Mossman shotgun behind the kitchen cabinetry. They also found a DeWalt circular saw in a storage compartment, a DeWalt drill driver and impact driver in a toolbox, a number of DeWalt power tools on the floor, and a 50-inch television on a top bunkbed. The utility trailer, the lawn tractor, and the antique rifle were among the items that were never recovered.
>
> *People v. Ebright*, No. 360014, 2024 WL 301928, at *1–2 (Mich. Ct. App. Jan. 25, 2024), *lv. den.*, 513 Mich. 1076, 5 N.W.3d 27 (2024), *reconsideration den.*, 514 Mich. 879, 8 N.W.3d 596 (2024).
>
> Petitioner seeks habeas relief on the following ground:
>
> I. A criminal defendant has a Sixth Amendment right to the effective assistance of counsel and to support such a claim an evidentiary hearing is often necessary. Mr. Ebright should be granted an evidentiary hearing on the right to the effective assistance of counsel when his trial attorney contested issues that should not have been contested; failed to adequately attack Pollard's credibility; failed to stipulate to Mr. Ebright having a prior felony conviction regarding the felon in possession count; and did not verify restitution.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). In order to obtain habeas relief in federal court, a state prisoner is required

to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.

## III. DISCUSSION

Petitioner alleges he was denied the effective assistance of trial counsel and that the state court erred in not ordering an evidentiary hearing on his ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973) and M.C.R. 7.211.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Whether the trial court or the Michigan Court of Appeals erred in its application of M.C.R. 7.211 in denying Petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik,* 193 F. App'x 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* at 585. Accordingly, Petitioner would not be entitled to habeas relief on this portion of his claim.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's*

standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123. Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner first argues that trial counsel was ineffective for attempting to raise a misidentification defense where the evidence of Petitioner's identity was overwhelming, rather than focusing on Petitioner's lack of criminal intent.

In addressing this claim, the Michigan Court of Appeals recited defense counsel's closing argument:

> Let's talk about first, [Chalker's neighbors]. And let's talk about 'em together because it's important. It's important because they don't have a dog in the fight. Their [sic] mindin' their own business workin' across the road, and they see—what their testimony was is two individuals come to the home. Now they're contacted by Trooper Murphy, and upon initial contact, neither one of them is able to identify [defendant]. It's only after Trooper Murphy pulls up [defendant's] photograph on his computer terminal in his car that he's able—that they say, "Yeah, that's the guy." But why? Let's back up a minute. They testified neither of them saw [defendant] enter that house. Neither of them saw

> [defendant] enter that building. What they did testify, they saw a truck and a trailer pull out and head north.
>
> They didn't see [defendant] in possession of firearms. They didn't see [defendant] in possession of power tools. And for that matter, neither did they see Ms. Pollard in possession of those items either.
>
> Defense counsel then made comments about the quality of the investigation:
>
> > But in the rush to move forward the investigation I submit to you, what else was missed? We heard about supposedly—what was supposedly recovered, but we don't know how it got there and when asked specifically if [defendant] had any knowledge of that shotgun that was placed in not an obvious spot in that camper, [Trooper Murphy] said, "no," he did not possess—he did not in his report have any way knowing [sic] if [defendant] had any knowledge that gun was there.
>
> *People v. Ebright*, 2024 WL 301928, at *3.

The Michigan Court of Appeals rejected Petitioner's claim that trial counsel was ineffective:

> Defendant argues that defense counsel was seemingly attempting to establish that defendant and Pollard were not actually at the home, that defendant and Pollard did not take anything from the home, and that defendant did not know Pollard had taken the gun. According to defendant, because the evidence of defendant's presence at the home and participation in the home invasion was overwhelming, the only sound strategy was to attack Pollard's credibility so as to undermine the intent element. Indeed, defense counsel even conceded as much during opening statements.
>
> When defense counsel's argument is viewed as a whole, it is clear that the principal strategy was to paint Pollard as a liar who sold out defendant to protect herself from prosecution. Defense counsel engaged in a deep examination of Pollard's credibility, emphasizing the deal she

> received to testify, the contradictions in her testimony, her intoxication at the time of the crime, the fact that there was "zero corroboration for [her] version of events," and that there was "simply no way to make sense of the timeline" she presented. The brief comments regarding the lack of details observed by the two neighbors can be viewed as an attempt to undermine the credibility of the prosecution's evidence more generally by pointing out that its two disinterested eyewitnesses had very little substance to actually offer. Finally, the points defense counsel made in reference to the fact that defendant was not seen carrying a gun out of the house and that Trooper Murphy could not establish that defendant knew the gun was in the camper were important for the defense to the felon-in-possession and felony-firearm charges. Even if defendant established that he reasonably believed Pollard had the right to enter the home and remove the property, that would not mean that defendant had the right to possess a firearm. Therefore, it was important to establish that defendant was never in possession of this gun.
>
> *Id.*

Although the right to the effective assistance of counsel extends to closing arguments, an attorney "has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). Judicial review of a defense attorney's summation must therefore be highly deferential and is "doubly deferential when it is conducted through the lens of federal habeas." *Id.*

The Third Circuit has noted that "[a] defense attorney's performance need not be based on some grand overarching theory in order to meet constitutional requirements." *Flamer v. State of Del.,* 68 F.3d 710, 729 (3rd Cir. 1995). "Perhaps

the single most commonly employed defense trial strategy is to eschew any single pre-planned theory and to put the prosecution to its proof and exploit any weakness that became evident as the trial unfolds." *Id.* Therefore, a defense attorney's failure to employ a single "unified" theory at trial does not necessarily amount to a deficient performance on counsel's part. *Id.*

"[T]he most successful criminal attorneys are often those who can create a reasonable doubt in the jurors' minds by throwing up one or two or more plausible alternatives to the defendant's guilt. Individual jurors need not be persuaded by the same plausible alternative to guilt to vote an acquittal." *Guilmette v. Howes*, 577 F. Supp. 2d 904, 916 (E.D. Mich. 2008), *aff'd en banc*, 624 F.3d 286 (6th Cir. 2010) (internal quotation omitted). In fact, in assessing the reasonableness of an attorney's investigation in the context of an ineffective assistance of counsel claim, a tactical decision to pursue one defense does not excuse an attorney's failure to present another defense that would bolster rather than detract from the primary defense. *Dugas v. Coplan*, 428 F.3d 317, 331 (1st Cir. 2005) (quoting *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993)).

In the present case, counsel's comments in his closing argument concerning the inability of the two neighbors to identify Petitioner and that they never saw him in possession of firearms or property did not detract from the primary defense that challenged the credibility of Ms. Pollard or the weaknesses in the evidence but

instead bolstered the primary defense. Moreover, trial counsel's brief mention of the two neighbors' inability to identify Petitioner at Chalker's house or see him in possession of Chalker's firearms or property offered the jury a plausible alternative theory to use to acquit Petitioner. Petitioner is not entitled to relief on his first subclaim.

Petitioner next claims that trial counsel was ineffective for failing to adequately explore on cross-examination Ms. Pollard's failure to take a polygraph examination even though she was required to do so as part of her agreement with the prosecutor.

Impeachment strategy falls within the category of an attorney's trial tactics that are difficult to attack. *Tackett v. Trierweiler*, 956 F.3d 358, 374 (6th Cir. 2020).

Counsel did question Ms. Pollard about the fact that the proffer agreement called for her to take a polygraph examination but that she had failed to do so. He also briefly mentioned this fact in his closing argument. *People v. Ebright*, 2024 WL 301928, at *4.

"Although other attorneys might have reached a different conclusion about the value of cross-examining [Ms. Pollard] in greater detail [about her failure to take a polygraph examination], counsel's strategic choice not to further cross-examine her on this issue was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466

U.S. at 689). While counsel could have further probed Ms. Pollard about the reasons why she failed to take a polygraph, "his failure to do so in light of the otherwise extensive cross-examination does not undermine the presumption that his "'conduct falls within the wide range of reasonable professional assistance.'" *Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) (quoting *Strickland,* 466 U.S. at 689). Finally, Petitioner has failed to identify how additional impeachment of Ms. Pollard would have affected the jury's decision. Defense counsel did not perform ineffectively by not more forcefully cross-examining Ms. Pollard regarding the polygraph issue, particularly when the effect of further probing was entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

The Michigan Court of Appeals, in rejecting Petitioner's claim, concluded that trial counsel "made a strategic choice to emphasize other avenues of attacking Pollard's credibility, such as the incentive to lie created by her deal with the prosecution, her intoxication at the time of the offense, and the implausible nature of the timeline she laid out." *People v. Ebright*, 2024 WL 301928, at * 4.

Petitioner was not prejudiced by counsel's failure to question Ms. Pollard more extensively about her failure to take a polygraph examination because this evidence was cumulative of other evidence that called Ms. Pollard's credibility into question and suggested that she had a motive to falsely accuse Petitioner. *Wong v. Belmontes,* 558 U.S. 15, 22-23 (2009). In this case, the jury had significant evidence

presented to it that Ms. Pollard's credibility was questionable as well as a potential motive for her to fabricate these charges against Petitioner. Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that Ms. Pollard was not a credible witness and had a motive to testify falsely, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23. Petitioner is not entitled to relief on his second subclaim.

In his third subclaim, Petitioner argues that trial counsel was ineffective for failing to stipulate that Petitioner had previously been convicted of a felony, to satisfy that element of the felon in possession of a firearm charge. [1] Instead, a probation officer testified that Petitioner had a prior felony conviction for third-degree fleeing and eluding and that he had failed to pay all of his fines regarding that conviction.

The Michigan Court of Appeals rejected the claim:

> Defendant has not overcome the presumption that defense counsel exercised sound trial strategy because there were numerous valid reasons supporting this approach. Had counsel merely stipulated to defendant having a prior specified felony without naming the specified felony, the jury would have been left to speculate about the nature of

[1] The elements of the offense of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See Parker v. Renico,* 506 F.3d 444, 448 (6th Cir. 2007).

> the prior felony. Providing the name and date of the prior felony prevented the jury from speculating whether the prior felony involved home invasion or gun charges and allowed the jury to know that the current home invasion and gun charges were not the continuation of a prior pattern of criminal activity. Further, the prior conviction was from 2014, which allowed the jury to know that several years had elapsed since defendant's prior criminal history. Finally, by disclosing to the jury that defendant's right to possess a firearm had not been restored under MCL 28.424(4)(b)(i) simply because he had not paid all fines imposed for the violation resulting in the prohibition, defense counsel prevented the jury from believing that his rights had not been restored for a more prejudicial reason.

*People v. Ebright*, 2024 WL 301928, at *6 (additional internal citation omitted).

Trial counsel was not ineffective for failing to stipulate that Petitioner had a prior felony conviction, because it might have been sound strategy for counsel to allow Petitioner's prior third-degree fleeing and eluding conviction to be admitted, in order to prevent the jurors from speculating that Petitioner might have been convicted of more serious offenses. *See e.g. Bradley v. Birkett*, 192 F. App'x 468, 476 (6th Cir. 2006); *See also Roby v. Burt*, No. 17-2043, 2018 WL 1176512, at *3 (6th Cir. Feb. 14, 2018) (trial counsel was not ineffective for failing to seek a stipulation that petitioner was ineligible to possess a firearm and for not objecting to the resulting testimony concerning the nature of his prior convictions and his parole and prior prison status; counsel's decision was a "valid trial tactic" because a stipulation "could have left the jury wondering whether Roby had actually been

convicted of more serious, violent offenses."). Petitioner is not entitled to relief on his third subclaim.

Petitioner finally argues that trial counsel was ineffective for failing to challenge the amount of restitution imposed by the judge at sentencing.

Petitioner's final ineffective assistance of counsel subclaim is non-cognizable on habeas review. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995). Continuing liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty as to warrant habeas relief. *Barnickel v. United States*, 113 F. 3d 704, 706 (7th Cir. 1997). Petitioner's claim that trial counsel was ineffective regarding the restitution order is likewise non-cognizable on habeas review because even if Petitioner's challenge was successful, it would only result in a reduction in his restitution payments, but not in his prison sentence. *See Vany v. Scutt*, No. 2:11-CV-14093, 2012 WL 2072311, at *6 (E.D. Mich. June 8, 2012) (citing *Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009)). Petitioner is not entitled to relief on his fourth claim.

## IV. CONCLUSION

The Court denies the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). [2] When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. The Court, however, grants Petitioner leave to appeal *in forma pauperis* because any appeal would be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED**.

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

s/Denise Page Hood
United States District Judge

Dated: September 30, 2026